**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Marc D. Powers
mpowers@bakerlaw.com
Matthew R. Goldman
mgoldman@bakerlaw.com

*Counsel for Plaintiffs Extended Stay*
*Litigation Trust, and Hobart Truesdell*
*and Walker, Truesdell, Roth & Associates,*
*as Trustees of the Extended Stay Litigation Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>EXTENDED STAY, INC. *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br><br>No. 09-13764 (JMP)<br><br>(Jointly Administered) |
| WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,<br><br>HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and<br><br>THE EXTENDED STAY LITIGATION TRUST,<br><br>          Plaintiffs,<br><br>          v.<br><br>The Blackstone Group, L.P., Blackstone Holdings I L.P., Blackstone Holdings II L.P., Blackstone Holdings III L.P., Blackstone Holdings IV L.P., Blackstone Holdings V | Adv. Pro. No. 11-2398<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO** <u>**WITHDRAW THE REFERENCE**</u><br><br>**ORAL ARGUMENT REQUESTED** |

L.P., Blackstone Holdings I/II GP, Inc., Blackstone Holdings III GP L.L.C., Blackstone Holdings IV GP L.P., Blackstone Holdings V GP L.P., Blackstone Real Estate Partners IV L.P., Blackstone Capital Partners IV L.P., BHAC IV, LLC, BRE/HV Holdings LLC, Blackstone Hospitality Acquisitions, LLC, Prime Hospitality, LLC, DL-DW Holdings, LLC, Lightstone Holdings LLC, The Lightstone Group, LLC, PGRT ESH Inc., Lightstone Commercial Management, Arbor ESH II, LLC, Arbor Commercial Mortgage, LLC, Princeton ESH LLC, Atmar Associates, LLC, Glida One LLC, Ron Invest LLC, Polar Extended Stay (USA) L.P., BHAC Capital IV, LLC, BRE/ESH Holdings, LLC, ABT-ESI LLC, Mericash Funding LLC, Park Avenue Funding LLC, Bank of America, N.A., Citigroup Global Markets Inc., Ebury Finance Limited, Banc of America Securities LLC, David Lichtenstein, Bruno de Vinck, Peyton "Chip" Owen, Jr., Guy R. Milone, Jr., Joseph Chetrit, Joseph Teichman, Joseph Martello, F. Joseph Rogers, David Kim, Gary DeLapp, Jonathan D. Gray, William Stein, Michael Chae, Robert L. Friedman, Thomas Burdi, Gary Sumers, Dennis J. McDonagh, Alan Miyasaki, and JOHN DOES 1 through 100, inclusive,

Defendants.

WALKER, TRUESDELL, ROTH & ASSOCIATES, as Trustee for and on behalf of the EXTENDED STAY LITIGATION TRUST,

HOBART TRUESDELL, as Trustee for and on behalf of the Extended Stay Litigation Trust, and

THE EXTENDED STAY LITIGATION TRUST,

Adv. Pro. No. 11-2254

Plaintiffs,

v.

The Blackstone Group, L.P., Blackstone
Holdings I L.P., Blackstone Holdings II L.P.,
Blackstone Holdings III L.P., Blackstone
Holdings IV L.P., Blackstone Holdings V
L.P., Blackstone Holdings I/II GP, Inc.,
Blackstone Holdings III GP L.L.C.,
Blackstone Holdings IV GP L.P., Blackstone
Holdings V GP L.P., Blackstone Real Estate
Partners IV L.P., Blackstone Capital Partners
IV L.P., BHAC IV, LLC, BRE/HV Holdings
LLC, Blackstone Hospitality Acquisitions,
LLC, Prime Hospitality, LLC, DL-DW
Holdings, LLC, Lightstone Holdings LLC,
The Lightstone Group, LLC, PGRT ESH Inc.,
Lightstone Commercial Management, Arbor
ESH II, LLC, Arbor Commercial Mortgage,
LLC, Princeton ESH LLC, Atmar Associates,
LLC, Glida One LLC, Ron Invest LLC, Polar
Extended Stay (USA) L.P., BHAC Capital
IV, LLC, BRE/ESH Holdings, LLC, ABT-
ESI LLC, Mericash Funding LLC, Park
Avenue Funding LLC, Bank of America,
N.A., Citigroup Global Markets Inc., Ebury
Finance Limited, Banc of America Securities
LLC, David Lichtenstein, Bruno de Vinck,
Peyton "Chip" Owen, Jr., Guy R. Milone, Jr.,
Joseph Chetrit, Joseph Teichman, Joseph
Martello, F. Joseph Rogers, David Kim, Gary
DeLapp, Jonathan D. Gray, William Stein,
Michael Chae, Robert L. Friedman, Thomas
Burdi, Gary Sumers, Dennis J. McDonagh,
Alan Miyasaki, and JOHN DOES 1 through
100, inclusive,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND .............................................................................................................. 2

    I.     The Complaints .................................................................................................... 2

        A.     The State Court Complaint. .................................................................... 2

        B.     The "Mirror Image" Complaint. ........................................................... 3

        C.     The Plaintiffs' Other Complaints ............................................................ 4

    II.     The Debtor's Bankruptcy .................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I.     These Actions are Subject to Mandatory Withdrawal of the Reference ............... 7

    II.     The Court Should Grant Permissive Withdrawal of the Reference. ..................... 11

CONCLUSION ............................................................................................................... 14

CERTIFICATE OF SERVICE ....................................................................................... 15

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) .................................................. 8

*Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203 (S.D.N.Y. Jan. 24, 1990)............................................................................................................ 8

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ........................................................................................................... 8

*General Electric Capital Corp. v. Pro-Fac Cooperative, Inc.*, 2002 WL 1300054 (S.D.N.Y. June 12, 2002) ................................................................................................................................... 10

*Geron v. Schulman (In re Manshul Construction Corp.)*, 225 B.R. 41 (Bankr. S.D.N.Y. 1998). 10

*Guccione v. Bell*, 2006 WL 2032641 (S.D.N.Y. July 20, 2006)...................................................... 9

*In re BearingPoint, Inc.*, 2011 WL 2709295 (Bankr. S.D.N.Y. July 11, 2011) .............. 11, 12, 13

*In re Chargit Inc.*, 81 B.R. 243 (Bankr. S.D.N.Y. 1987)............................................................. 10

*In re Dana Corp.*, 379 B.R. 449 (S.D.N.Y. 2007).......................................................................... 8

*In re General Media, Inc.*, 335 B.R. 66 (S.D.N.Y. 2005).............................................................. 9

*In re Ionosphere*, 103 B.R. ........................................................................................................... 8

*In re Johns-Manville Corp.*, 63 B.R. 600 (Bankr. S.D.N.Y. 1986) ............................................... 8

*In re Johns-Manville Corp.*, 7 F.3d 32 (2d Cir.1993).................................................................... 9

*In re Kassover*, 336 B.R. 74 (S.D.N.Y. 2006) .............................................................................. 9

*In re Northwest Airlines Corp.*, 348 B.R. 51 (S.D.N.Y. 2008)..................................................... 12

*Krys v. Sugrue*, 2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ...................................................... 9

*Northwood Estates v. Evergreen Bank, N.A.*, 114 Fed. Appx. 416 (2d Cir. 2004)........................ 9

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993) .............................................................................................................................. 12

*Publicker Industries Inc. v. U.S. (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110 (2d Cir. 1992).. 10

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir. 1990) ........................................................................................................................................ 8

*Stern v. Marshall*, 131 S.Ct. 2594 (2011) ........................................................................... passim

*Stern v. Marshall*, 131 S.Ct. 2595 (2011) ............................................................................... 7, 9

*Walker, Truesdell, Roth & Assoc. v. Archon Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2259 ............................................................................................................................. 5

*Winstar Holdings, LLC v. Blackstone Group L.P.*, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .................................................................................................................................................. 10

*Wollman v. Jocar Realty Co., Inc.*, 19 A.D.3d 210 (1st Dep't 2005) ............................................. 4

**Statutes**

11.” U.S.C. § 1334 ................................................................................................................ 6

28 U.S.C. § 157 ......................................................................................................... passim

28 U.S.C. § 157(d) ................................................................................... 1, 7, 12, 14

**Rules**

Bankruptcy Rule 9027(e)(3) ............................................................................................ 13

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO WITHDRAW THE REFERENCES

Plaintiffs, Walker, Truesdell, Roth & Associates ("WTR&A"), as Trustee for and on behalf of the Extended Stay Litigation Trust (the "Trust"), the Trust, and Hobart Truesdell, as Trustee for and on behalf of the Trust ("Truesdell," and together with WTR&A and the Trust, the "Plaintiffs"), submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 157(d) withdrawing the reference of this action from the United States Bankruptcy Court to the United States District Court.   As set forth herein, these cases meet the standard for both mandatory and permissive withdrawal of the reference and must be heard before an Article III district court.

## PRELIMINARY STATEMENT

The Plaintiffs move to withdraw the reference of adversary proceeding numbers 11-2398 and 11-2254 under 28 U.S.C. § 157(d) on mandatory and permissive grounds.[1]   *First*, the adversary proceedings should be mandatorily withdrawn in light of the ambiguity created by the recent Supreme Court decision in *Stern v. Marshall*, which limited the constitutional authority of bankruptcy courts to enter final judgment against third-parties under certain circumstances on prepetition state law claims, and in consideration of the Second Circuit case law limiting post-confirmation jurisdiction of bankruptcy courts.   The Bankruptcy Court will have to engage in substantial and material consideration and interpretation of federal constitutional law concerning the Bankruptcy Court's subject matter jurisdiction and constitutional authority to enter judgments against defendants, or to hold jury trials, for purely state law causes of action, which

---

[1] Plaintiffs are seeking withdrawal of the reference in the adversary proceedings numbered 11-2398 and 11-2254 jointly for purposes of efficiency and because the issues for the Court to consider are the same for both.  Plaintiffs, however, remain opposed to the consolidation of matters sought by the Blackstone Defendants.  The procedural and jurisdictional issues implicated by this motion differ entirely from the substantive issues relevant to the Blackstone Defendants' motion to consolidate, and Plaintiffs reserve all rights in that regard and do not hereby waive any arguments by pursuing this matter jointly for the Court's convenience.

will require more than a routine application of the law, given the newly evolving legal framework in these areas.  *Second*, permissive withdrawal of the reference will promote judicial efficiency, prevent delay and cost to the parties, and avoid forum shopping.  As a practical matter, there is a strong likelihood of unnecessary litigation and considerable procedural delays that could impede the prosecution of the claims in the Bankruptcy Court.  Plaintiffs respectfully submit that to avoid delay and unnecessary litigation expense that may arise under these circumstances, the matter should be adjudicated by the District Court.

## BACKGROUND

The Plaintiffs have filed a series of lawsuits, for the benefit of the debtors' creditors, which arose from a disastrous leveraged buyout (the "LBO") of the Extended Stay, Inc. and Homestead Village LLC family of companies (collectively, the "Company," and including the bankrupt debtor entities) consummated on or about June 11, 2007, and the post-LBO fiduciaries responsible for substantial diversions of funds thereafter.  These separate, but equally improper, actions destroyed billions of dollars in value in the Extended Stay, Inc. family of companies.  At the LBO's closing, the pre-sale officers and directors allowed Blackstone to siphon $2.1 billion of value from the debtors.  After the LBO, the post-sale buyer's officers, directors and members allowed the systematic draining of over $100 million through the continuous payment of improper dividends and distributions to post-LBO equity holders and their affiliates.

## I.     The Complaints

### A.     *The State Court Complaint.*

On June 14, 2011, the Plaintiffs filed  a complaint in the Supreme Court of the State of New York, County of New York in the matter styled *Walker, Truesdell, Roth & Assoc., et al. v. The Blackstone Group, L.P., et al.*, Index No. 651667/2011 (the "State Court Complaint").  On July 1, 2011, the Blackstone Defendants filed their Notice of Removal of the State Court

Complaint.  Pursuant to a Standing Order dated July 10, 1984 of the United States District Court for the Southern District Of New York, the Removed Action was referred to this Court by Transfer Order, dated July 12, 2011.  *Walker, Truesdell, Roth & Assoc., et al. v. The Blackstone Group, L.P., et al.*, Adv. Pro. No. 11-2398 (Dkt. 1).  Contemporaneously with the motion to withdraw the reference, the Plaintiffs also seek, by separate motion, to remand the State Court Complaint to the Supreme Court of the State of New York.

The State Court Complaint asserts causes of action that arise exclusively under state law for breaches of fiduciary duty, corporate waste, aiding and abetting breaches of fiduciary duty, unjust enrichment and illegal dividends and other distributions.  The defendants to the action fall into three basic categories:  (i) former directors, officers or other persons controlling the Debtors immediately prior to and at the time of the LBO; (ii) former directors, officers or other persons controlling the Debtors after the LBO closed; and (iii) certain advisors that were materially involved in consummating the LBO.  No federal causes of action are alleged.

B.      *The "Mirror Image" Complaint.*

On June 14, 2011, the Plaintiffs filed a complaint in this Court in the matter styled *Walker, Truesdell, Roth & Assoc., et al. v. The Blackstone Group, L.P., et al. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2254 (the "Mirror Image Complaint").  This action seeks identical relief to the State Court Complaint, and was filed only to avoid any risk that an inappropriate ruling by a New York State Court regarding its jurisdiction would harm the Trust.

As the Plaintiffs explained in the Mirror Image Complaint:

> The Trustee has filed a substantially identical complaint asserting all of the causes of action asserted herein against the same defendants herein in the Supreme Court of the State of New York ("New York State Court"). The Trustee believes that the causes of action asserted herein are more appropriately asserted and adjudicated in the New York State Court, that venue is proper in the New York State Court and that the New York State Court has jurisdiction over all of the causes of action asserted herein and the defendants against which such causes of action are asserted. *Out of an abundance of*

3

*caution and in order to avoid the risk of a possible forfeiture of valuable estate causes of action on technical grounds, the Trustee has filed the complaint herein.* The Trustee believes that the New York State Court will, and should, exercise jurisdiction over the causes of action and defendants herein. *Upon a final determination that the New York State Court will and may exercise jurisdiction over the causes of action and defendants herein, the Trustee anticipates a voluntary dismissal of the instant action.* If, on the other hand, the New York State Court dismisses the action filed in New York State Court because jurisdiction is proper only in federal Court, then this action will proceed.

Mirror Image Compl. ¶ 145 (emphasis added).

The purpose of filing both the State Court Complaint and Mirror Image Complaint was to avoid any risk of a statute of limitations defense were a New York Supreme Court Judge to conclude the Plan of Reorganization provisions deprive the State of New York of subject matter jurisdiction and then dismiss that action, rather than transferring it to federal court.[2]  To preserve the Trust's state law claims, a prophylactic measure was taken to file the Mirror Image Complaint on the basis of this Court's "related to" jurisdiction under section 1334(b) of title 28. As noted in paragraph 145 of the Mirror Image Complaint, the Plaintiffs will go forward with either the State Court Complaint, or the Mirror Image Complaint, not both, depending upon rulings by this Court and the State Court.  As with the State Court Complaint, no federal causes of action are alleged in the Mirror Image Complaint.

C.    *The Plaintiffs' Other Complaints.*

On June 14 and 15, 2011, the Trustee filed three other actions asserting only avoidance and federal law claims: (i) *Walker, Truesdell, Roth & Assoc. v. The Blackstone Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2255 (the "LBO Complaint") (asserting federal and other causes of action seeking the avoidance and recovery of fraudulent transfers and subsequent transfers made in connection with the LBO under sections 544, 550 and 551 of the Bankruptcy

---

[2] *See, e.g., Wollman v. Jocar Realty Co., Inc.*, 19 A.D.3d 210, 211 (1st Dep't 2005).  The Plaintiffs submit that the State Court Action be decided on its substantive merits, not on technicalities that could result in a forfeiture of valuable estate causes of action.

Code, disallowance of claims under section 502(d) of the Bankruptcy Code and federal securities claims); (ii) *Walker, Truesdell, Roth & Assoc. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2256 (the "Post-LBO Complaint") (asserting federal and other causes of action seeking the avoidance and recovery of $1 billion of fraudulent transfers and subsequent transfers, made after the LBO, under sections 544, 547, 548, 550 and 551 of the Bankruptcy Code, and disallowance of claims under section 502(d) of the Bankruptcy Code); and (iii) *Walker, Truesdell, Roth & Assoc. v. Archon Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2259 (the "Conflict Complaint") (asserting federal and other causes of action for the avoidance and recovery of fraudulent transfers and subsequent transfers under sections 544, 547, 548, 550 and 551 of the Bankruptcy Code, and disallowance of claims under Bankruptcy Code section 502(d)).  The LBO and Post-LBO Complaints are the subject of separate motions to withdraw the reference.[3]

## II.    The Debtor's Bankruptcy.

The Extended Stay Debtors' Fifth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated as of June 8, 2010, was confirmed by this Court on or about July 20, 2010 (the "Plan of Reorganization").  *See* Order Confirming Debtors' Fifth Amended Joint Plan of Reorganization (Dkt. 1172); *see also* Debtors' Fifth Amended Joint Plan of Reorganization (Dkt. No. 1057).  The Plan of Reorganization went effective on October 8, 2010, has been substantially consummated, and the Debtors have emerged from bankruptcy.  *See* Notice of Effective Date (Dkt. 1254); *See also* Plan of Reorganization ¶ 79.  Other than causes of action to be liquidated in the actions described below, claims reconciliation matters and final distributions to creditors, the Extended Stay bankruptcy cases are all but administered.

---

[3] The fifth action, *Walker, Truesdell, Roth & Assoc. v. Archon Group, L.P. (In re Extended Stay, Inc.)*, Adv. Pro. No. 11-2259, was commenced by separate counsel due to potential conflicts of interest.  That action is not the subject of either of the motions to withdraw the reference.

The Extended Stay Litigation Trust Agreement (the "Litigation Trust Agreement"), which is a post-confirmation litigation trust established for the benefit of creditors of the debtors, was executed in connection with the Plan of Reorganization, and created a Litigation Trust. The Litigation Trust's assets include, but are not limited to, any potential claims, causes of action, charges, suits or rights of recovery of the Debtors or Extended Stay, Inc. referenced in the Examiner's Report of Ralph R. Mabey, examiner in the Chapter 11 Cases, filed with the Bankruptcy Court on April 8, 2010 (the "Litigation Trust Assets"). *See* Examiner's Report (Dkt. 913).

As a result of the Examiner's Report and an analysis of the relevant documentation, the Plaintiffs filed the above-mentioned lawsuits. Under the Plan of Reorganization, and the Order Confirming the Debtor's Plan of Reorganization, the Bankruptcy Court intended to retain exclusive jurisdiction "over any matter arising under the Bankruptcy Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent that is legally permissible." *See* Order Confirming Debtors' Fifth Amended Joint Plan of Reorganization ¶ 59 (Dkt. 1172). The Bankruptcy Court's authority, however to enter final judgments on lawsuits initiated against third parties, post-confirmation of a plan is at the very least a litigable issue considering the recent Supreme Court decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

## ARGUMENT

Section 1334(b) grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." U.S.C. § 1334. Under section 157(a) of title 28, the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district court. 28 U.S.C. § 157. The Southern District of New York has a standing order in place that provides for automatic reference to the bankruptcy court. The reference, however, may be withdrawn. Section 157(d) of the Judicial

6

Code provides for both mandatory and discretionary withdrawal of the reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this action, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  As set forth below, the adversary proceedings, which involve suits initiated post-confirmation of a plan, are subject to mandatory and permissive withdrawal of the reference in light of the recent *Stern v. Marshall* decision.

## I.      These Actions are Subject to Mandatory Withdrawal of the Reference.

As the Court is likely well aware, the Supreme Court recently issued a decision affecting the power of bankruptcy courts to enter final judgments on noncore state law matters.  In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court does not have the constitutional authority to enter a final judgment on a state law mandatory counterclaim that is not resolved in the process of ruling on a creditor's proof of claim, even though the counterclaim was characterized as a "core" proceeding under 28 U.S.C. § 157(b)(2)(C).  *Stern v. Marshall*, 131 S.Ct. 2595, 2611 (2011).

Given the Supreme Court's recent decision, the Plaintiffs must now seek withdrawal of the reference in the State Court Complaint, and to have the state law issues in the State Court and Mirror Image Complaints adjudicated by an Article III judge.  Withdrawal is required given the unsettled nature of a bankruptcy court's constitutional authority to enter final judgments on suits initiated against third-parties post-confirmation, especially when those suits are derived exclusively from noncore state law causes of action.  Plaintiffs anticipate that there will likely be a constitutional challenge to the proceedings in the Bankruptcy Court and to avoid such

unnecessary litigation, respectfully submit that mandatory withdrawal is necessary.

Section 157(d) provides that withdrawal of the reference is mandatory in any proceeding that involves substantial and material consideration and interpretation of federal laws, other than the laws contained in the bankruptcy code.  *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *see also Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (requiring "substantial and material consideration" of federal non-bankruptcy law for mandatory withdrawal); *In re Johns-Manville Corp.*, 63 B.R. 600 (Bankr. S.D.N.Y. 1986) (determination of CERCLA issues mandated withdrawal as it required interpretation of both title 11 and other federal laws).  The reference has thus been withdrawn in cases that "require 'the bankruptcy court to engage itself in the intricacies' of non-Bankruptcy law, as opposed to 'routine application' of that law."  *In re Dana Corp.*, 379 B.R. 449, 453 (S.D.N.Y. 2007) (quoting *Shugrue*, 922 F.2d at 995); *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) ("'The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'") (quoting *Eastern Airlines, Inc. v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)).  "[W]here matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met," *In re Ionosphere*, 103 B.R. at 419, however, the "district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference," *Enron Power Mktg.*, 2004 WL 2711101, at *2.

The Plaintiffs' request for mandatory withdrawal should be granted given the constitutional uncertainty of a Bankruptcy Court to enter final judgments on state law causes of action post-confirmation.  There is a substantial likelihood that the Bankruptcy Court will have

to delve into the intricate issue of whether retention of post-confirmation jurisdiction exists for a bankruptcy judge to enter final orders, in light of the recent *Stern v. Marshall* decision.  The constitutional and jurisdictional questions that *Stern v. Marshall* raises have yet to be thoroughly adjudicated in the courts and, arguably, constitute issues of first impression.

The Second Circuit has explained that "[a] bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *Northwood Estates v. Evergreen Bank, N.A.*, 114 Fed. Appx. 416, 416 (2d Cir. 2004) (quoting *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir.1993)).  A line of cases in the Southern District of New York, however, also hold that federal jurisdiction "shrinks" post-confirmation.  *Krys v. Sugrue*, 2008 WL 4700920, at *5-6 (S.D.N.Y. Oct. 23, 2008); *see also In re Kassover*, 336 B.R. 74, 79 (S.D.N.Y. 2006); *Guccione v. Bell*, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006); *In re General Media, Inc.*, 335 B.R. 66, 73 (S.D.N.Y. 2005).  A party invoking the bankruptcy court's post-confirmation jurisdiction must show that the matter has a close nexus to the bankruptcy plan or proceeding, and that the plan provides for the retention of jurisdiction over the dispute.  *Krys v. Sugrue*, 2008 WL 4700920, at *6.  Although it is arguable that the Bankruptcy Court retained post-confirmation jurisdiction in this case, it is now unclear whether the Bankruptcy Court's retention of jurisdiction over the noncore state law claims at issue was constitutionally appropriate.   *See* Order Confirming Plan ¶ 59 (retaining subject matter jurisdiction to the extent "legally permissible").

The claims for breaches of fiduciary duty, corporate waste, aiding and abetting breaches of fiduciary duty, unjust enrichment and illegal dividends and other distributions in the State Court and Mirror Image Complaints are noncore because they stem from state law.  At best, the Bankruptcy Court has "related to" jurisdiction, rather than "arising in" or "arising under"

jurisdiction.[4]   The claims in the State Court and Mirror Image Complaints were not created by title 11, nor do they derive from the Bankruptcy Code.  They existed prior to and irrespective of the bankruptcy case and they arise out of state law.

An action is "related to" a pending bankruptcy proceeding where "its outcome might have any 'conceivable effect' on the bankruptcy estate." *Publicker Industries Inc. v. U.S. (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992).  A proceeding has a "conceivable effect" on the bankruptcy estate where the dispute would "affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities."  *General Electric Capital Corp. v. Pro-Fac Cooperative, Inc.*, No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 12, 2002) (*quoting Geron v. Schulman (In re Manshul Construction Corp.)*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998)).  Accordingly, the claims in the State Court Complaint are, at best, "related to" the bankruptcy.

The Supreme Court in *Stern v. Marshall* concluded that bankruptcy courts do not have the constitutional authority to enter final judgments on purely state law counterclaims, and which will not be resolved in the process of ruling on a creditor's proof of claim.  *See Stern v. Marshall*, 131 S.Ct. at 2620 ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim").  Although the Supreme Court emphasized that the question presented in *Stern v. Marshall* "is a 'narrow' one,' *Id.*, at least one court in this district has recognized the

---

[4] A proceeding "arises under Title 11" only "when a cause of action is one which is created by Title 11." *In re Chargit Inc.*, 81 B.R. 243, 246-47 (Bankr. S.D.N.Y. 1987).  A proceeding "arises in" a case under Title 11 if it is one that can only be brought in a bankruptcy case and would have "no existence outside of the bankruptcy." *Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07 Civ. 4634, 2007 WL 4323003, at *3 (S.D.N.Y. Dec. 10, 2007) (internal quotations and citations omitted*); see In re Chargit*, 81 B.R. at 247.  Neither of these definitions applies.

procedural complications that could arise in connection with the Bankruptcy Court's retention of

post-confirmation jurisdiction over third-party claims similar to the ones herein:

> I normally would be quite reluctant to modify a confirmation order—even where, as here, there are no issues of unscrambling eggs and no detrimental reliance by the objecting parties on the provisions in question.  But here concerns emerging from my fear that, if litigated here, this action would be bogged down in procedural complications, aggravated by the Supreme Court's recent decision in *Stern v. Marshall* and statements by the Targets' counsel that reinforce those concerns, now provide cause for doing so.
>
> While there is no issue, even after *Stern v. Marshall*, as to the subject matter jurisdiction of the bankruptcy court to hear this controversy, the claims here are not "core."  If I require this action to be litigated here in the bankruptcy court—or, more precisely, initially in the bankruptcy court—there is a material risk, in my mind, that especially with the inspiration of *Stern v. Marshall*, and the Targets' pointed reminder that I wouldn't be authorized to enter final judgment, this action will be tied in procedural knots by motion practice, here and in the District Court, exploiting asserted or actual inabilities on my part, as an Article I bankruptcy judge, to issue findings and orders.  Here, I fear, the additional litigation resulting from my inability to fully rule will have its own *Bleak House* implications, not unlike the *Bleak House* litigation referred to by the *Stern v. Marshall* court itself.
>
> Now that I've satisfied myself that the Trustee's claims aren't frivolous, and especially if I cannot enter final judgment, there are no benefits in hearing the action here.  To the contrary, requiring the Trustee to endure the procedural hurdles in starting (but evidently, not finishing) the litigation in the bankruptcy court, which the Targets have wholly ignored, can hardly be said to be in the interests of justice.

*See generally In re BearingPoint, Inc.*, 2011 WL 2709295, at *1 (Bankr. S.D.N.Y. July 11,

2011).  In an abundance of caution, the Plaintiffs seek withdrawal of the reference for the above-

mentioned reasons.

## II.     The Court Should Grant Permissive Withdrawal of the Reference.

The reference to the bankruptcy court should also be withdrawn "for cause" under 28

U.S.C. § 157(d).  Withdrawing the reference will promote judicial efficiency, prevent delay and cost to the parties, and avoid forum shopping.  Accordingly, in light of *Stern v. Marshall*, and subsequent cases interpreting that decision, it would be more practical and efficient to withdraw the reference at this stage.

While the provisions for permissive withdrawal do not define "cause," the Second Circuit has established a two-pronged test.  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993).  "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."  *Id.*  Second, the court must weigh directly "questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Id.*  None of the factors is dispositive, and efficiency and uniformity are the overriding considerations.  *In re Northwest Airlines Corp.*, 348 B.R. 51, 56 (S.D.N.Y. 2008).  Consideration of a party's right to a jury trial is also an important consideration.  *Id.*

There is a material risk that, especially with the inspiration of *Stern v. Marshall*, that the Bankruptcy Court would not be authorized to enter final judgment and these actions will be "tied in procedural knots by motion practice" on the issue of whether the Bankruptcy Court has the constitutional authority to enter final judgment.  *See In re BearingPoint*, 2011 WL 2709295, at *1.  In *In re BearingPoint*, the trustee of the liquidating trust initiated suit against a number of directors for breach of fiduciary duty under the authority of the confirmed plan of reorganization.  *Id.* at *2.   Under the confirmed Plan of Reorganization, Judge Gerber retained exclusive jurisdiction over the actions.  *Id.*  Nonetheless, Judge Gerber agreed to modify and limit the jurisdictional language of the Plan of Reorganization for the purposes of allowing the trustee to

12

continue the lawsuits in Virginia State Court.  *Id.* at *1.  The Bankruptcy Court explained that, in light of *Stern v. Marshall*, the actions may be materially slowed by motion practice premised on the Bankruptcy Court's lack of constitutional authority to enter a final judgment.  *Id.* at *7.  In *In re BearingPoint*, Judge Gerber was concerned with the defendants' ability to tie up the case by exploiting their rights to a determination by an Article III judge when litigation against them is noncore.  *Id.* at *1.  The facts of *In re BearingPoint* are virtually identical: Judge Peck sought to retain subject matter jurisdiction, to the extent legally permissible, but doing so would allow these purely state law causes of action to be adjudicated in the Bankruptcy Court.

Judge Gerber also observed that consent by all parties to proceedings in the Bankruptcy Court, provides no assurance that the constitutional issues caused by *Stern v. Marshall* would disappear:

> But in *Stern v. Marshall*, the majority, while repeatedly stating that Pierce had consented to the bankruptcy court's determination, nevertheless found his consent, under the facts there, inadequate . . . . [I]t's fair to assume that it will now be argued, that consent, no matter how uncoerced and unequivocal, will never again be sufficient for bankruptcy judges ever to issue final judgments on non-core matters.  That huge uncertainty presages litigation over the issue with the potential to tie up this case, and countless others, in knots.  It also would seemingly invite litigants to consent, see how they like the outcome, and then, if they lose, say their consents were invalid.

*Id.* at *16-17 (internal footnotes and citations omitted).[5]  Given Judge Gerber's opinion on the issue of consent, there is significant risk to the Trust that consent may not be sufficient, which may create an undue financial risk litigating this issue.  Accordingly, permissive withdrawal would further advance efficiency.

---

[5] Although Judge Gerber's comments were directed at consent in non-core matters, *Stern v. Marshall* involved an unquestionably "core" matter under Section 157.  Therefore, the Plaintiffs submit that Judge Gerber's concerns regarding the ineffectiveness of consent would apply equally to "core" and "non-core" matters.  And given these concerns, the Plaintiffs cannot consent to jurisdiction in this Court, as noted in the Plaintiffs' Bankruptcy Rule 9027(e)(3) statement, filed on July 15.

Although there clearly exists, at a minimum, "related to" subject matter jurisdiction over the noncore claims at issue, it is now unclear whether the Bankruptcy Court has the constitutional authority to enter final judgments on those claims considering a Plan of Reorganization has already been confirmed. As a practical matter, there may be a number of considerable procedural delays that could slow down the prosecution of the claims in the Bankruptcy Court. Moreover, considering the Supreme Court's holding that bankruptcy courts cannot qualify as mere adjuncts of the district court, having these cases adjudicated in the Bankruptcy Court would create undue delay and cost to the Trust. *See Stern v. Marshall*, 131 S.Ct. at 2611. In the exercise of their business judgment, the Plaintiffs respectfully submit that to avoid unnecessary litigation, and in the interest of judicial economy, it would be prudent to save the estate that time and cost and have the matter adjudicated by an Article III court.

## CONCLUSION

For all the reasons set forth above, the Plaintiffs' lawsuits arising from the State Court and Mirror Image Complaints against Defendants require withdrawal of the reference, both on mandatory and on discretionary grounds. Plaintiffs, accordingly, respectfully move this Court for an order withdrawing the reference of the Plaintiffs' adversary proceedings under 28 U.S.C. § 157(d).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties via transmission of Notice of Electronic filing generated by CM/ECF.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/  Marc D. Powers*
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
Marc D. Powers
mpowers@bakerlaw.com
Matthew R. Goldman
mgoldman@bakerlaw.com
Benjamin D. Pergament
bpergament@bakerlaw.com
George Klidonas
gklidonas@bakerlaw.com

AND

Brian A. Bash (*pro hac vice* application forthcoming)
bbash@bakerlaw.com
Wendy J. Gibson (*pro hac vice* application forthcoming)
wgibson@bakerlaw.com
Baker & Hostetler LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482
Telephone:    (216) 621-0200
Facsimile:    (216) 696-0740

*Counsel for Plaintiffs Extended Stay Litigation Trust, and Hobart Truesdell and Walker, Truesdell, Roth & Associates, as Trustees of the Extended Stay Litigation Trust*

15